UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAIRE J. KAY and CLAYMORE
CONSTRUCTION CO.,

   Plaintiffs/Counter-Defendants,

v.

UNITED OF OMAHA LIFE INSURANCE
COMPANY d/b/a MUTUAL OF OMAHA
INSURANCE COMPANY,

  Defendants,

And

FLAGSTAR BANK,

   Intervening Defendant/Counter-Plaintiff.
                    /

Case No. 09-11887

Honorable John Corbett O'Meara

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT UNITED'S MOTION FOR SUMMARY JUDGMENT AND**
**DENYING WITHOUT PREJUDICE DEFENDANT UNITED'S MOTION TO DISMISS**

  This matter came before the court on defendant United of Omaha Life Insurance Company's March 15, 2011 motion for summary judgment and March 15, 20111 motion to dismiss Count II. Plaintiffs filed responses April 5, 2011; and intervenor Flagstar Bank filed a response April 5, 2011. Defendant United filed reply briefs April 18, 2011. Oral argument was heard May 12, 2011.

**BACKGROUND FACTS**

  Defendant United of Omaha Life Insurance Company ("United") issued a policy of term life insurance to Dr. Sherman Kay as the policy owner and the insured on June 12, 2001. The policy required monthly premium payments of $4,062,21. From the inception of the policy until the time United denied plaintiff Claire J. Kay's claim for benefits, United had received over $350,000.00 in

premium payments on the policy. Dr. Kay amended the policy January 31, 2005, to name his wife Claire and his business, Claymore Construction Company, as joint primary beneficiaries. On August 12, 2005, Dr. Kay assigned a one-half ownership interest in the life insurance policy to Claymore Construction to serve as security for the company to obtain construction loans through intervenor Flagstar Bank. Claymore Construction subsequently assigned a beneficiary interest in the life insurance policy to Flagstar Bank as security for a commercial construction loan. On August 12, 2005, Dr. Kay also assigned the remaining one-half ownership interest in the policy to his wife Claire.

For several years, United received timely payment of the premiums; however, there were times that premium payments were paid after their due dates. A 31-day grace period was in effect following the due dates, during which time United accepted premium payments. For example, a premium payment was due September 12, 2007. The payment was not paid timely and was also not paid within the 31-day grace period. On November 12, 2007, United sent Claymore Construction a letter stating, "Since your payment has not been received, your coverage has terminated and is no longer providing you protection." The letter further advised that since the grace period had also passed, an Application for Reinstatement would need to be filled out to seek reinstatement of coverage. However, United accepted payment on November 12, 2007, without termination and without a reinstatement application.

On May 28, 2008, Claire Kay called United and informed it that she wanted to keep the policy in effect. When the June 12, 2008 premium payment went unpaid, United gave Claire Kay an additional 30 days to pay. At the same time Claire Kay requested that the premium notices be sent to her and her husband's home address, and United complied with the request.

On August 7, 2008, Morris Silverman, an independent insurance agent who sold Dr. Kay the policy, contacted United and informed them that Dr. Kay was very ill and that this was "a sensitive case." Plaintiff's resp. br. at 3.

Another monthly payment was due December 12, 2008. Although no premium notice was sent before the due date, United sent its first premium notice for the December payment on December 19, 2008. It sent a second on December 26, 2008, and a third on January 13, 2009. The first notice provided:

> Unless each premium billed on this Notice is paid on or before the due date or within the grace period, each policy on which the premium is not paid will lapse and all payments thereon will become forfeit except as otherwise stated in the contract.

Defendant's Ex. 7 at 33-34.

The third notice provided:

> Although we haven't received your premium, we feel certain this policy is important to you. For a limited time only, we are willing to allow you to reinstate your policy without evidence of insurability simply by paying this premium. To take advantage of this offer, payment must be postmarked on or before February 01, 2009 and during the lifetime of all persons insured under the policy. If you do not take advantage of this offer, evidence of insurability will be required to reinstate the policy. Waiving the usual requirement of proof of good health does not extend the Grace Period nor change the policy in any way. This offer applies to this premium only; it does not apply to future premiums nor establish a precedent.

Id. at 37-38.

Dr. Kay died January 23, 2009. As of the date of his death, the December payment had not been paid. On January 30, 2009, Claire Kay sent a check to United for the December 2008 premium and included an additional amount to cover the January 2009 premium, which would have been due January 12, 2009. United returned the check to her February 10, 2009. She filed a claim for benefits

with United on February 24, 2009; and on March 19, 2009, United sent her a written notice denying the claim.

Plaintiffs filed suit against defendant United in Oakland County Circuit Court, and United removed the action to this court May 18, 2009. Plaintiff's Second Amended Complaint alleges breach of contract in Count I and negligence in Count II. Count III seeks declaratory judgment.

## LAW AND ANALYSIS

An insurer may be equitably estopped from denying benefits to an insured under the policy where the insurer has induced an insured to believe that strict compliance with a stated payment date was not necessary. The Michigan Supreme Court has found:

> If the company has, by its course of conduct, acts or declarations, or by any language in the policy, misled the insured in any way in regard to the payment of premiums, or created a belief on the part of the insured that strict compliance with the letter of the contract as to payment of premium on the day stipulated would not be exacted, and the insured in consequence fails to pay on the day appointed, the company will be held to have waived the requirement, and will be estopped from setting up the condition as cause for forfeiture.

Morales v. Auto-Owners Ins. Co., 458 Mich. 288, 296 (1998).

In Morales, an insured driver was involved in an automobile accident six days after the expiration of his auto insurance policy. Throughout the history of the policy, the insurer had repeatedly accepted the insured's late payment of renewal premiums, sometimes even after sending notices of non-renewal. The Michigan Supreme Court overturned the appellate decision in the insurer's favor and determined the insurer was estopped from enforcing the non-renewal provision of the policy to deny the insured's claim. The court stated that it is "generally accepted" that because provisions for forfeiture, lapse, or suspension for nonpayment of premiums, assessments,

or dues are for the benefit of the insurer, the insurer may waive, or may be estopped to assert, such a provision through its conduct or words. Id. at 295. The court stated that the test is as follows:

> whether the insurer, by his course of dealing with the insured, or by the acts and dealings of his authorized agents, had induced in the mind of the insured an honest belief that the terms and conditions of the policy, declaring a forfeiture in the event of nonpayment on the day and in the manner prescribed, will not be enforced, but that payment will be accepted on a subsequent day or in a different manner; and when such belief has been induced, and the insured has acted on it, the insurer will be estopped from insisting on the forfeiture.

Id. at 296.

In this case United accepted late premium payments on seven occasions. United argues that although the payments were late, they were still paid within a certain "Special Offer Period," which extended beyond the 31-day grace period provided in the parties' agreement. The January 13, 2009 notice provided that payment could be made until February 1, 2009, well beyond the due day and the grace period. Of course, it also provided that the insured must be living at the time of payment. However, based on United's repeated acceptance of late premium payments, a reasonable jury could find that United is estopped from deeming the policy forfeited. Genuine issues of material fact exist regarding whether the insurer induced the insured's belief that the premium due dates would not be enforced. Therefore, defendant United is not entitled to summary judgment. Although Plaintiffs have asked for, but not moved for, summary judgment, the court finds that the genuine issues of material fact also preclude summary judgment in Plaintiffs' favor.

Defendant's motion to dismiss seeks dismissal of Count II, Plaintiffs' claim for negligence. Defendant argues that where no separate and distinct duty exists outside the parties' agreement, a negligence claim fails to state a claim upon which relief may be granted. Whether the claim is

dismissed or not, however, Plaintiffs would be entitled to only a single award of damages. The court will deny without prejudice United's motion to dismiss Count II.

### **ORDER**

It is hereby **ORDERED** that defendant United's March 15, 2011 motion for summary judgment is **DENIED.**

It is further **ORDERED** that defendant United's March 15, 2011 motion to dismiss Count II is **DENIED WITHOUT PREJUDICE.**

                                        s/John Corbett O'Meara
                                        United States District Judge

Date:  May 31, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, May 31, 2011, using the ECF system.

                                        s/William Barkholz
                                        Case Manager